**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

DEAUNDRA BILLINGSLEY,

      Plaintiff,

v.                           No. 2:20-cv-02570-MSN-tmp

CHRISTOPHER TRACY, JUSTIN VAZEII,
PRENTISS JOLLY, MICHAEL W. RALLINGS,
and the CITY OF MEMPHIS, TENNESSEE,

      Defendants.

---

**ORDER GRANTING DEFENDANT CITY OF MEMPHIS' MOTION TO DISMISS,
GRANTING DEFENDANT CITY OF MEMPHIS' MOTION TO EXCLUDE EXPERT
OPINIONS, DENYING AS MOOT DEFENDANT VAZEII'S MOTION TO DISMISS,
AND DENYING AS MOOT THE PARTIES' JOINT MOTION TO STAY**

---

    This cause comes before the Court on Defendants Christopher Tracy, Justin Vazeii, Prentiss Jolly, Michael Rallings, and the City of Memphis' Motion to Dismiss (collectively "Defendants").[1] Plaintiff filed a response in opposition. (ECF No. 27.) Defendants then filed their Reply. (ECF No. 35.) For the reasons below, the Motion is **GRANTED**. Additionally, Defendants' Motion to Exclude Expert Opinions, (ECF No. 34), is **GRANTED**.

### Background

    A federal civil rights lawsuit, this case involves the City of Memphis and several Memphis police officers. (ECF No. 21 at PageID 52–53, 55–56.) Plaintiff Deaundra Billingsley's Amended

---

    1. Defendant City of Memphis filed its motion on behalf of all named Defendants. (ECF No. 24 at PageID 99 n.1.) Defendant City of Memphis also notes that, at the time of the Motion's filing, Defendants Vazeii and Tracy had not been served. (*Id.*) Since then, Defendant Justin Vazeii has been served and filed his own Motion to Dismiss the Amended Complaint. (ECF No. 39.)

Complaint raises a panoply of claims. (*Id.* at PageID 64–70.) At its core, Plaintiff's action alleges that Memphis police officers Justin Vazeii and Christopher Tracy detained him without probable cause, subjected him to a warrantless search, and forcibly penetrated his anus in violation of his constitutional rights. (*Id.* at PageID 52–53.) Further, Plaintiff contends that Defendants tolerated these blatant constitutional violations and failed to take action to remedy the problem. (*Id.* at PageID 64.)

On July 31, 2019, Plaintiff walked down the street in Binghampton. (*Id.* at PageID 56.) As he neared the intersection of Red Oak Street and Mimosa Avenue, Plaintiff encountered a young man he knew, identified in Plaintiff's Complaint as D.M. (*Id.*) The two stopped to talk for a while. (*Id.*)

During their conversation, a Memphis patrol car pulled up next to them. (*Id.*) Officers Vazeii and Tracy quickly emerged from the vehicle and shouted at Plaintiff and D.M. to place their hands on the hood of the patrol car. (*Id* at PageID 57.) Officer Tracy then detained Plaintiff and frisked him. (*Id.* at PageID 57.) Officer Vazeii did the same for D.M. (*Id.*) Plaintiff immediately objected to the officers' actions, demanding his release. (*Id.*)

After he frisked D.M., Officer Vazeii placed what appeared to be cannabis onto the patrol car's hood. (*Id.*) D.M. was then handcuffed and placed face down in the back of the patrol car. (*Id.*) Around the same time, Officer Tracy handcuffed Plaintiff and forced him against the patrol car. (*Id.*) Again, Plaintiff objected to the officers' behavior and demanded reasons for his detention.[2] (*Id.*)

---

2. According to Plaintiff, Officer Tracy's demeanor and tone throughout their interaction suggested that he delighted in being able to physically control Plaintiff. (ECF No. 21 at PageID 58.) Officer Tracy exerted this control by leaning on Plaintiff's handcuffs, causing Plaintiff severe pain. (*Id.*)

At this point, Officer Tracy pulled down Plaintiff's pants and stuck his hand beneath Plaintiff's undershorts.  (*Id.*)  Officer Tracy then penetrated Plaintiff's anus with one or two of his fingers up to the second knuckle.  (*Id.*)  Plaintiff did not consent to this contact.  (*Id.*)  Shortly thereafter, Officer Vazeii asked Officer Tracy "did you check his asshole good?"  (*Id.* at PageID 59.)

Eventually, Officer Tracy forced Plaintiff down onto the nearby curb.  (*Id.*)  By this time, a crowd gathered and had been observing the incident.  (*Id.*)  Plaintiff sat on the curb for about an hour.  (*Id.*)  While Plaintiff sat, the observers shouted at the officers and demanded Plaintiff's release.  (*Id.*)  This annoyed Officer Vazeii, causing him to warn Plaintiff that "he better stop talking."  (*Id.*)  He then motioned toward the bag of cannabis on the hood and explained that he could "write this up" how he wants.  (*Id.* at PageID 59–60.)  Officer Tracy then reminded Officer Vazeii that the interaction was being recorded by tapping the bodycam on his chest.  (*Id.* at PageID 60.)  After another hour spent on the curb, Plaintiff was released.  (*Id.*)

The following day, Plaintiff reported the incident to the Memphis Police Department's Investigation Services Bureau ("ISB").  (*Id.* at PageID 61.)  Plaintiff did not document the date of the incident for later reference because he did not think it necessary.  (*Id.*)  Throughout the following months, Plaintiff contacted ISB on four or five occasions to obtain the records or information related to his citizen's complaint.  (*Id.*)  ISB denied each request.  (*Id.*)  Representatives at ISB informed Plaintiff that he needed counsel to reach out on his behalf.  (*Id.*)  Plaintiff later obtained counsel who then proceeded to try to obtain the records from ISB.  (*Id.*)  Counsel's attempts did not fare any better.[3]  (*Id.* at PageID 61–63.)

---

3.  Attached to Plaintiff's Amended Complaint is a declaration from Plaintiff's counsel detailing his efforts to learn more information related to the July 31 incident.  (*See* ECF No. 21-1.)

Plaintiff received information responsive to his prior requests on August 19, 2020.  (*Id.* at PageID 63.)  Plaintiff learned that ISB did not decide his ISB complaint until July 28, 2020.  (*Id.*)  At no point did a representative from ISB or the Memphis Police Department attempt to reach out to Plaintiff to inform him of ISB's determination.  (*Id.*)

### Procedural Posture

Plaintiff filed his Complaint on August 5, 2020.  (ECF No. 1.)  Plaintiff then filed his Amended Complaint on September 16, 2020.  (ECF No. 21.) Defendants filed their pending Motion to Dismiss for Failure to State a Claim on September 30, 2020.  (ECF No. 24.)  Plaintiff then filed his Response on November 2, 2020.  (ECF No. 27.)  In conjunction with his Response, Plaintiff also submitted the signed opinions of two purported experts in the neurobiology of trauma and a civil complaint filed in another proceeding.   (*See* ECF Nos. 27-1, 27-2, and 27-3.)  Defendants filed their Reply on November 20, 2020.  (ECF No. 35.)  That same day, Defendants filed their Motion to exclude the opinions offered by Plaintiff in his Response.  (ECF No. 34.)  Plaintiff has filed a Response to that Motion.  (ECF No. 36.)

### Standard of Review

To decide a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff."  *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002).  Using this framework, the court determines whether the complaint alleges "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face if "the plaintiff pleads factual content that allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

A complaint need not contain detailed factual allegations; however, a plaintiff's "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). Put differently, the "[f]actual allegations must be enough to raise a right to relief above [a] speculative level." *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). Should a court decide in light of its judicial experience and common sense that the claim is not plausible the case may be dismissed at the pleading stage. *Iqbal*, 556 U.S. at 679. "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679; *Twombly*, 550 U.S. at 556.

Courts may "consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein" while ruling on a 12(b)(6) motion to dismiss. *See Basset v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)).

## Motion to Exclude

Alongside his Response to Defendants' Motion to Dismiss, Plaintiff attached as exhibits the signed opinions of Dr. James Hopper, (ECF No. 27-1), and Dr. Neil Aronov, (ECF No. 27-2), purported experts on trauma neurobiology. Plaintiff offers these exhibits to show that, as an alleged rape victim, he could have misremembered the exact date of the underlying incident in this suit. (ECF No. 27 at PageID 156.) However, as Plaintiff further explains, "the[se] opinions speak

not so much to Billingsley specifically [sic] as to a reasonable person in his circumstances generally" because neither doctor examined Plaintiff.  (*Id.* at PageID 156 n. 11.)

Defendants have moved to exclude these opinions under Federal Rule of Civil Procedure 12(d).  (ECF No. 34 at PageID 270.)  Defendants argue that Plaintiff asks the Court to consider matters outside of the pleadings because he attached these exhibits to his Response.  Thus, they submit that this motion should be transformed into a motion for summary judgment or that these opinions be excluded.  (ECF No. 34-1 at PageID 276.)  The Court chooses the latter option.  Under Rule 12(d):

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

The Court may exclude evidence under Rule 12(d).  *See Max Arnold & Sons, LLC v. W.L. Hailey & Co., Inc.*, 452 F.3d 494, 503 (6th Cir. 2006).  Indeed, if the Court does not exclude the evidence, this Rule 12(b)(6) motion will be transformed into a Rule 56 motion for summary judgment.  *Id.* ("In our view, Rule 12(c) requires only one action by the district court for the conversion to a summary judgment motion to occur: failure to exclude presented outside evidence.").

The Court does not find persuasive Plaintiff's argument that these opinions are merely offered to inform the Court of the possible effects of trauma on the brain in a general sense.  (ECF No. 36 at PageID 304–05.) To be sure, Plaintiff is not asking the Court "to take judicial notice that [Plaintiff] did in fact experience these effects." (*Id.* at PageID 304.)  However, to allow this evidence, which Defendants assert they will "vehemently challenge," will enable Plaintiff to circumvent applicable procedures for tendering expert testimony.  The Court will not allow Plaintiff to introduce unchallenged expert opinion testimony to influence the Court's analysis under Rule 12(b)(6).

Further, Plaintiff's reliance on *Gunning v. Mead Corp.*, 143 F. Supp. 35 (E.D. Tenn. 1956) and *Prudential Ins. Co. of America v. Gang*, 197 S.W.2d 806 (Tenn. 1946) is misplaced. (ECF No. 36 at PageID 306.) Neither of these cases dealt with a 12(b)(6) motion. *Gunning* was a bench trial. *Gunning*, F. Supp. at 36. Similarly, *Prudential Ins. Co.* was issued after the parties' trial. 197 S.W. at 189. Therefore, the Court **GRANTS** Defendants' Motion to exclude these opinions.

### Analysis

Although Defendants raise a litany of arguments for why this matter should be dismissed, the Court need only focus on one. As a threshold matter, Defendants argue that Plaintiff brought this action outside the applicable statute of limitations and that his claims are time-barred. (ECF No. 24-1 at PageID 110.) Plaintiff does not dispute this point. (ECF No. 27 at PageID 157–59.) Instead, he asserts that the doctrines of equitable tolling or equitable estoppel allow his claims to survive. (ECF No. 27 at PageID 157–169.)

### A. Applicable Law

Statutes of limitations serve an important purpose because they "are primarily designed to assure fairness to defendants." *Burnett v. N.Y. Cent. R. Co.*, 380 U.S. 424, 428 (1965). Limitation periods accomplish this purpose and "promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared." *Id.* (quoting *Order of R.R. Telegraphers v. Ry. Express Agency*, 321 U.S. 342, 348–49 (1944)). Therefore, a court should be hesitant to "extend limitations by even a single day" without some compelling reason to do so. *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 561 (6th Cir. 2000).

Plaintiff primarily brings his claim under 42 U.S.C. § 1983. (ECF No. 21 at PageID 54.) Notably, "Congress did not specifically adopt a statute of limitations governing § 1983 actions."

*See Buck v. City of Highland Park*, 733 F. App'x 248, 252 (6th Cir. 2018) (quoting *Banks v. City of Whitehall*, 344 F.3d 550, 553 (6th Cir. 2003)).  As such, the Court looks to applicable state law to determine the limitations period.  *See Roberson v. Tenn.*, 399 F.3d 792, 794 (6th Cir. 2005); *Cox v. City of Jackson*, 811 F. App'x 284, 288 (6th Cir. 2020).  Here, Tennessee law governs.  *See Hall v. Spencer Cty.*, 583 F.3d 930, 933 (6th Cir. 2009) ("[T]he Court applies the statute of limitations [period]. . .where the cause of action originated.").

Under Tennessee law, Plaintiff had one (1) year to file his civil action.  *See Johnson v. Memphis Light Gas & Water Div.*, 777 F.3d 838, 843 (6th Cir. 2015); *see also* Tenn. Code. Ann. § 28-3-104(a)(3) ("[T]he following actions shall be commenced within one (1) year after the cause of action accrued. . . [c]ivil actions for compensatory or punitive damages, or both, brought under the federal civil rights statutes[.]").  The parties do not dispute this.  (ECF No. 24-1 at PageID 110; ECF No. 27 at PageID 157–59.)

The clock on a plaintiff's action "begins to run when the injury occurs or is discovered, or when in the exercise of reasonable care and diligence, it should have been discovered." *Potts v. Celotex Corp.*, 796 S.W.2d 678, 680 (Tenn. 1990) (citing *McCroskey v. Bryant Air Conditioning Co.*, 524 S.W.2d 489, 490–91 (Tenn. 1975)).   Normally, a statute of limitations argument is an affirmative defense.  *See* Fed. R. Civ. P. 8(c)(1) ("In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense, including. . . statute of limitations[.]"); *see also Reid v. Baker*, 499 F. App'x 520, 526 (6th Cir. 2012).  However, "when the court can ascertain from the complaint that the period for bringing the claim has expired, a plaintiff must affirmatively plead an exception to the limitations statute." *Reid*, 499 F. App'x at 526 (citing *Auslender v. Energy Mgmt. Corp.*, 832 F.2d 354, 356 (6th Cir. 1987)); *Alsbrook v. Concorde Career Colleges, Inc.*, 469 F. Supp. 3d 805, 823 (W.D. Tenn. 2020).

Plaintiff filed his initial Complaint on August 5, 2020, (ECF No. 1), and his Amended Complaint, (ECF No. 21), on September 16, 2020.  Plaintiff's Amended Complaint states the events that give rise to this cause occurred on July 31, 2019.  (ECF No. 21 at PageID 56.) Consequently, it is clear from the face of the Complaint that Plaintiff has not timely filed his claim. Thus, Plaintiff must plead an exception to the limitations period.  *See Reid*, 499 F. App'x at 526.

Plaintiff attempts to plead such an exception when he argues in his Amended Complaint that grounds exist for equitable tolling of the limitations period.  (ECF No. 21 at PageID 70–76.) Just as the Court borrows the relevant limitations period from state law, it also looks to state law for its tolling rules.  *See Bd. of Regents, Univ. of N.Y. v. Tomanio*, 446 U.S. 478, 483–86 (1980) (instructing that in § 1983 actions, the Court not only borrows the limitations period from state law but also state tolling rules); *Hardin v. Straub*, 490 U.S. 536, 538–39 (1989); *Kucharski v. Leveille*, 526 F. Supp. 2d 768, 771 (E.D. Mich. 2007).  The Court applies the state tolling rules unless they would conflict with federal law.  *See Tomanio*, 446 U.S. at 483–86; *see also Roberson v. Macnicol*, 698 F. App'x 248, 250–51 (6th Cir. 2017) ("Having borrowed the state's statute of limitations for the § 1983 claim[s], we apply the state's tolling rules as long as they are not inconsistent with federal law or policy.") (internal quotations omitted) (quoting *Johnson*, 777 F.3d at 845).  Given this, the Court turns to whether sufficient equitable grounds exist to toll the limitations period.

## B.  **Plaintiff has not pled a case for equitable tolling**

Defendants argue in their Motion that Plaintiff's claims are barred by the one (1) year statute of limitations and equitable grounds do not exist to excuse his untimely filing.  (ECF No. 24-1 at PageID 110–117.)  Defendants rely on case law that applies federal tolling rules to support their argument.  (*Id.* at PageID 112–117.)  For example, they cite the multi-factor test announced in *Truitt v. Cty. of Wayne*, 148 F.3d 644 (6th Cir. 1998), to warrant their claim that no grounds

exist for equitable tolling. (*Id.* at PageID 113.) This argument is misplaced. As explained above, state tolling rules concerning—not federal rules—govern § 1983 actions unless such state rules conflict with federal law. *See Roberson*, 698 F. App'x at 250–51. Indeed, courts must borrow from state law the applicable limitations period and tolling rules because "Congress did not specifically adopt a statute of limitations" for § 1983 claims. *See Buck*, 733 F. App'x at 252. The cases cited by Defendants address whether equitable tolling should apply to limitation periods established in federal statutes. *See Truitt v. Cty. of Wayne*, 148 F.3d at 648 (deciding whether equitable tolling applies to the ninety (90) day limitations period for actions under Title VII); *Graham-Humphreys*, 209 F.3d at 561 (same).

Here, applying operative state law, Plaintiff's claims must fail because the Tennessee law does not recognize the doctrine of equitable tolling. *See Redwing v. Catholic Bishop for Diocese of Memphis*, 363 S.W.3d 436, 460 (Tenn. 2012) ("However, unlike other state courts and the federal courts, we have declined to recognize the doctrine of equitable tolling in civil cases."); *Whitehead v. State*, 402 S.W. 3d 615, 626 (Tenn. 2013) ("While we have recognized the doctrine of due process tolling with regard to post-conviction petitions, we have consistently declined to recognize the doctrine of equitable tolling in civil proceedings."). Thus, the Court cannot excuse Plaintiff's untimely filing under state law because state law does not afford him the remedy he requests. Moreover, the Court cannot ignore applicable state law because it produces a seemingly harsh result. As the default rule, the Court applies state tolling rules unless they conflict with federal law. *See Tomanio*, 446 U.S. at 483–86. Plaintiff has not argued that the state rule conflicts with federal law. *See Roberson*, 698 F. App'x at 250–51 ("Nor does Roberson argue that Michigan's rules clash with federal law—the only circumstance in which we could apply the

federal rules.") (citing *Johnson*, 777 F.3d at 845).  Thus, the Court applies Tennessee law which does not recognize the doctrine of equitable tolling.

However, because both parties address the federal standard of equitable tolling and other courts have applied this standard in similarly situated matters in Tennessee, the Court will address whether grounds exist to equitably toll this matter under the federal standard.[4]  They do not.   The Court weighs five (5) factors to determine whether equitable tolling should apply: (1) the plaintiff's lack of actual notice of a filing requirement; (2) the plaintiff's lack of constructive notice of a filing requirement; (3) the plaintiff's diligence in pursuing his rights; (4) whether the opposing party will suffer prejudice if tolling applies; and (5) the reasonableness of the plaintiff's ignorance about the particular legal requirement. *Truitt*, 148 F.3d at 648 (6th Cir. 1998).  This list is not exhaustive, *see Graham-Humphreys*, 209 F.3d at 561, because "[t]he propriety of equitable tolling must necessarily be determined on a case-by-case basis." *Truitt*, 148 F.3d at 648.

Here, the first and second factors—whether Plaintiff had actual or constructive notice of a filing requirement—weigh against the application of equitable tolling.  Plaintiff asserts that the "pertinent question here is not whether Billingsley or counsel knew there was a deadline, but whether they knew the date on which it fell."  (ECF No. 27 at PageID 167–68.)  Notably, Plaintiff offers no support for this assertion.   Moreover, the Court does not agree with Plaintiff's characterization.   Rather, the proper analysis concerns whether Plaintiff knew that a filing requirement existed. *See Jurado v. Burt*, 337 F.3d 638, 643 (6th Cir. 2003) ("Thus, Jurado does

---

4. It must be recognized that other courts have held in the § 1983 context, "a body of state tolling law that lacks a provision for equitable tolling is inconsistent with the provision of a complete federal remedy . . . and therefore is overridden by federal doctrine." *Heck v. Humphrey*, 997 F.2d 355, 358 (7th Cir. 1993); *Budget Charters, Inc. v. Pitts*, No. 3:17-cv-722, 2017 WL 5444743, at *16 (M.D. Tenn. November 14, 2017) (applying the federal tolling standard in a § 1983 action because Tennessee lacks a correlative provision).  In the interest of thorough review, the Court will assess Plaintiff's claims under the federal tolling rules.

not contend that he or his counsel was unaware of AEDPA's one-year limitations period. Rather, they made a tactical decision to continue investigating claims for his state post-conviction relief application although they were aware that his time in which to file for habeas relief would expire."); *Graham-Humphreys*, 209 F.3d at 561 ("Prior to retrieving her RTS document, Graham–Humphreys knew that she was required to commence her judicial complaint within a finite period."); *Jackson v. United States*, 715 F.3d 712, 719 (6th Cir. 2014).

Plaintiff asserts that he lacked actual notice because he did not know when the statute tolled. (ECF No. 27 at PageID 167.) This argument implies that Plaintiff knew about the filing requirement but did not know by when he needed to file. Indeed, that constitutes the gravamen of Plaintiff's tolling argument. However, as explained above, this is not the proper analysis. Because Plaintiff does not allege that he lacked notice of the filing requirement, this factor weighs against his request.

Turning to constructive notice, Plaintiff contends that he lacked constructive notice of the exact date the limitations period would run. (*Id.* at PageID 167–68.) This argument is unavailing. Critically, Plaintiff retained counsel before the limitations period ran. (ECF No. 21-1). After all, "constructive knowledge of a time limit will usually be imputed when the plaintiff retains an attorney within the limitations period." *Weigel v. Baptist Hosp. of E. Tenn.*, 302 F.3d 367, 376 (6th Cir. 2002).

As to the third factor—whether Plaintiff exercised reasonable diligence in pursuing his rights—the Court finds that it also weighs against a finding for equitable tolling. Before going further, the Court stresses that it does not discount the actions by Plaintiff and his counsel. Rather, the Court analyzes whether these actions were reasonable under the circumstances. *See Jurado*,

337 F.3d at 643–44.  Accordingly, the Court draws a distinction between reasonable diligence and leaving no stone unturned.[5]  *See id.*  at 644

    Plaintiff recounts some of the efforts he took to gather information concerning his ISB complaint in his Amended Complaint.  (ECF No. 21 at PageID 61; ECF No. 21-1.)  First, Plaintiff retained counsel on June 16, 2020—which is over a month before the limitations period would run.  (ECF No. 21-1 at PageID 80; ECF No. 21 at PageID 76.)  Second, Plaintiff's counsel undertook efforts to confirm the exact date of the incident that gave rise to this dispute.  (*Id.*) While extensive, the Court finds that these efforts "do not. . . amount to diligence in pursuing his rights[.]" *Jurado*, 337 F.3d at 644.  Given Plaintiff's (justifiable) concern over the impending limitations period, the more prudent measure would have been to file a defective complaint than continue delaying the filing of this matter until counsel had exact certitude about the date it occurred.  *See cf. Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990) ("We have allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period[.]"); *see also Jurado*, 337 F.3d at 644.

    Concerning the fifth and final factor, whether the party remained reasonably ignorant of the particular legal requirement, the Court finds that it also weighs against Plaintiff's request.

---

    5. To support of his assertion that whether he exercised reasonable diligence is a question of fact unsuited for determination on a Rule 12(b)(6) motion, Plaintiff cites the cases of *Montesi v. Nationwide Mut. Ins. Co.*, 970 F. Supp. 2d 784 (W.D. Tenn. 2013) and *Sherill v. Souder*, 325 S.W.3d 584 (Tenn. 2010).  (ECF No. 27 at PageID 168.)  These cases are inapposite because they address the application of the discovery rule—an issue not raised here.  Indeed, the language Plaintiff quotes from *Montesi* eventually states that "whether a plaintiff has exercised reasonable diligence and care in discovering that he has a cause of action, however, is a question of fact."  *See Montesi*, 970 F. Supp. 2d at 789 (citing *Gerdau Ameristeel Inc. v. Ratliff*, 368 S.W.3d 503, 509 (Tenn. 2012)) (emphasis added).  Similarly, *Sherill v. Souder* also addresses application of the discovery rule under Tennessee law.  *See Sherill*, 325 S.W.3d at 596–97.

Here, Plaintiff clearly understood his need to timely file his claim. Thus, he cannot claim reasonable ignorance of the legal requirement.

The court does not address whether Defendants would face any prejudice because this factor is only considered where a reason justifying tolling exists. *See Andrew v. Orr*, 851 F.2d 146, 151 (6th Cir. 1988). Therefore, whether under state or federal law, the Court finds that Plaintiff is not entitled to equitable tolling.

**C.  Plaintiff has not pled a prima face case for equitable estoppel**

Plaintiff raises the additional argument that the doctrine of equitable estoppel allows his untimely claims to proceed. (ECF No. 27 at PageID 159–66.) Defendants respond by arguing that Plaintiff did not plead equitable estoppel in his Amended Complaint. (ECF No. 35 at PageID 287.) However, assuming *arguendo* that Plaintiff did, he failed to plead a *prima facie* claim for equitable estoppel. (*Id.*)

The Court first takes up Defendants' argument that Plaintiff did not affirmatively plead the doctrine of equitable estoppel. As previously established, when it is clear on the face of the plaintiff's complaint that the limitations period has run, the plaintiff must "affirmatively plead an exception to the limitations statute." *Reid*, 499 F. App'x at 526. Upon review, Plaintiff's Amended Complaint does not once refer to the doctrine of equitable estoppel. Instead, Plaintiff continually invokes the doctrine of equitable tolling. (ECF No. 21 at PageID 53, 70, and 76.) As Plaintiff accurately explained, the doctrines of equitable estoppel and equitable tolling are not interchangeable. (ECF No. 27 at PageID 159.) It appears then that Plaintiff did not affirmatively invoke the doctrine of equitable estoppel in his Amended Complaint and is trying to raise a new claim in response to Defendants' Motion to Dismiss. Plaintiff cannot do this. *See Desparois v. Perrysburg Exempted Village Sch. Dist.*, 455 F. App'x 659, 665–66 (6th Cir. 2012) (explaining

14

that a party cannot raise a new claim in response to a dispositive motion). However, because Defendants have had an opportunity to address this argument by Plaintiff, the Court will also address it. *See Cruz v. Capital One, N.A.*, 192 F. Supp. 3d 832, 839 (E.D. Mich. 2016).

Assuming that Plaintiff did raise the doctrine of equitable estoppel, Defendants argue that Plaintiff failed to plead a *prima facie* case. (ECF No. 35 at PageID 288.) To this end, Defendants rely on the standard articulated under federal law for the doctrine of equitable estoppel.[6] (*Id.* at PageID 287.) Defendants again invoke the wrong standard to make this argument because Tennessee law, not federal law, governs whether Plaintiff has adequately pled a claim for equitable estoppel. *See Roberson*, 698 F. App'x at 250–51. Notably, the two standards in practice do not significantly diverge and so the Court will refer to Defendants' argument where applicable.

Unlike equitable tolling, Tennessee law recognizes the doctrine of equitable estoppel. *See Fahrner v. SW Mfg., Inc.*, 48 S.W. 3d 141, 146 (Tenn. 2001); *Norton v. Everhard*, 895 S.W.2d 317, 321 (Tenn. 1995). A *prima facie* claim of equitable estoppel requires:

> (1) Conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) Intention, or at least expectation that such conduct shall be acted upon by the other party; (3) Knowledge, actual or constructive of the real facts.

---

6. Defendants rely on the standard articulated in *Egerer v. Woodland Realty Inc.*, 556 F.3d 415, 425 (6th Cir. 2009), which states:

> 1) there must be conduct or language amounting to a representation of a material fact; 2) the party to be estopped must be aware of the true facts; 3) the party to be estopped must intend that the representation be acted on, or the party asserting the estoppel must reasonably believe that the party to be estopped so intends; 4) the party asserting the estoppel must be unaware of the true facts; and 5) the party asserting the estoppel must reasonably or justifiably rely on the representation to his detriment.

(ECF No. 35 at PageID 287.)

15

*Osborne v. Mountain Life Ins. Co.*, 130 S.W.3d 769, 774 (Tenn. 2004); *see also Domus Dev. LLC v. Titan Dev. LLC*, 350 F. Supp. 3d 683, 690 (M.D. Tenn. 2018); *Smith v. Hi-speed, Inc.*, 536 S.W.3d 458, 482 (Tenn. Ct. App. 2016).  In addition to this showing, the party that invokes the doctrine must show: (1) lack of knowledge and the means of knowledge about the truth in question; (2) reliance on the party's conduct; and (3) action based on that reliance resulting in prejudice.  *See Osborne*, 130 S.W. at 774; *Domus Dev. LLC*, 350 F. Supp. 3d at 690; *Smith*, 536 S.W.3d at 482.

Generally, "[e]stoppel is not favored," and the party that invokes the doctrine bears the burden to prove each element.  *Buchholz v. Tenn. Farmers Life Reassurance Co.*, 145 S.W. 3d 80, 85 (Tenn. Ct. App. 2003); *Hardcastle v. Harris*, 170 S.W.3d 67, 84 (Tenn. Ct. App. 2004) ("At the same time, estoppels are not favored when they prevent parties from asserting claims or defenses to which they would otherwise be entitled.").  Fundamentally, "an equitable estoppel claim . . . is used to defeat a statute of limitations defense [when] the defendant intentionally induced the plaintiff to delay filing suit within the time required by the statute of limitations." *Redwing*, 363 S.W.3d at 465 (citing *Fahrner*, 48 S.W.3d at 145.)

The primary focus of an equitable estoppel claim "is on the defendant's conduct and the reasonableness of the plaintiff's reliance on that conduct."  *Id.* at 461 (quoting *Hardcastle*, 170 S.W.3d at 85.  Circumstances in which the doctrine has been successfully invoked include situations where: (1) the defendant promised to not assert a limitations defense; (2) the defendant promised to settle to prevent the filing of a lawsuit; and (3) the defendant promises to settle a claim following the conclusion of another proceeding between the defendant and a third party.  *Id.* at 460–61.

Plaintiff argues that the doctrine applies here because Defendants failed to disclose the exact date the incident occurred despite repeated requests by Plaintiff and his counsel.  (ECF No.

27 at PageID 160.)  Defendants counter by asserting that Plaintiff's Amended Complaint does not contain allegations to the effect that Defendants affirmatively misled Plaintiff, or that Plaintiff reasonably relied on that representation.  (ECF No. 35 at PageID 288.)

Plaintiff offers a detailed account of the efforts undertaken to confirm the exact date the incident at issue occurred.  (ECF No. 21 at PageID 61; ECF No. 21-1 at PageID 80–86.)  For example, before he obtained counsel, Plaintiff reached out to members at the ISB four (4) or five (5) times concerning records related to his ISB complaint.  (ECF No. 21 at PageID 61.)  He was informed by ISB representatives that he needed to be represented by counsel.  (*Id.*)  Plaintiff later obtained counsel in June 2020.  (ECF No. 21-1 at PageID 80.)  Counsel then tried on several occasions to confirm the date in question.  (ECF No. 21-1 at PageID 80–86.)  These efforts included several emails, phone calls, and trips to the ISB office.  (*Id.*)

Despite this account, there are absences in Plaintiff's Amended Complaint that the Court cannot overlook.  Plaintiff's Amended Complaint misses the mark on two key elements required for an equitable estoppel claim.  First, Plaintiff has failed to allege sufficient facts that show Defendants misrepresented or concealed a material fact.  Second, Plaintiff has not alleged that he reasonably relied on any purported misrepresentations or concealment made by Defendants.

The Court first addresses the failure by Plaintiff to allege any affirmative misrepresentation by Defendants.  To invoke the doctrine of equitable estoppel, Plaintiff must allege that Defendants' conduct amounted to a false representation or concealment of material fact.  *See Osborne*, 130 S.W.3d at 774.  "Silence, failure to act, or acquiescence may be sufficient to invoke equitable estoppel where, in context, they reasonably mislead another."  *Smith v. Smith*, No. M2004-00257-COA-R3-CV, 2005 WL 3132370, at *8 (Tenn. Ct. App. Nov. 22, 2005) (citing *Church of Christ v. McDonald*, 171 S.W.2d 817, 821 (Tenn. 1943)).

The gravamen of Plaintiff's tolling argument is that Defendants never **disclosed** the exact date of the incident despite repeated requests by Plaintiff and his counsel and a statutory duty to do so.  (ECF No. 21 at PageID 70–74; ECF No. 27 at PageID 165.)  However, this argument alone does not establish this key element because, "in context," Defendants' actions did not reasonably mislead Plaintiff.  *See Smith*, 2005 WL 3132370, at * 8.  Put differently, the Court does not find that Defendants actions amount "to a false representation or concealment of material facts" that "convey[ed] the impression that the facts are otherwise than, and inconsistent with" facts previously asserted.  *Osborne*, 130 S.W.3d at 774.

To support his proposition that Defendants' silence constituted an affirmative misrepresentation or concealment, Plaintiff relies on *Equal Emp't Opportunity Comm'n v. Ky. State Police Dep't*, 80 F.3d 1086 (6th Cir. 1996) (hereafter "*KSPD*") and *Price v. State Farm Mut. Auto. Ins. Co.*, 486 S.W.2d 721 (Tenn. 1972).  (ECF No. 27 at PageID 160–61.)   Neither apply here.

*KSPD* differs from the present matter in a meaningful way:  the plaintiffs in *KSPD* lacked both actual and constructive knowledge of their legal rights due to the defendant's omission.  *See KSPD*, 80 F.3d at 1094–95.  Similarly, in *Price v. State Farm Mut. Auto. Ins., Co.*, the defendant failed to inform the plaintiff about a change in the law despite a statutory duty to do so.  *See Price*, 486 S.W.3d at 724.  Consequently, the plaintiff had been completely unaware of the change in law that affected his legal rights.  *Id.*

 Here, Plaintiff cannot claim a lack of knowledge to the same extent as the plaintiffs in *Price* and *KSPD*.   Indeed, Plaintiff knew of his legal rights and the operative facts underlying his claim.  He even retained counsel before the limitations period expired.  He only lacked the exact date of the incident.  Put differently, Plaintiff enjoyed the benefit of information that the plaintiffs

in *Price* and *KSPD* did not have.  The Court must examine each case on its own facts and Plaintiff's facts depart significantly from those at issue in *Price* and *KSPD*.

Turning to Plaintiff's Amended Complaint, Plaintiff does not so much as allege that Defendants affirmatively misrepresented the date of the incident; rather, he claims Defendants did not disclose the date of the incident.  (*See* ECF No. 21 at PageID 72–76.)  Non-disclosure does not constitute an affirmative misrepresentation without more.   The closest allegation within Plaintiff's Complaint of an affirmative misrepresentation appears in the signed declaration provided by Plaintiff's counsel.  (ECF No. 21-1).  There, Plaintiff relays a conversation his counsel had with a member from ISB.  Plaintiff's counsel asserts that he spoke with an ISB representative on June 25, 2020.  (ECF No. 21-1 at PageID 83–84.)  During this call, counsel inquired into the exact date of the incident and also informed the representative that he believed it occurred in mid or late August 2019.  (*Id.* at PageID 84.)  According to Plaintiff's counsel, "[t]he (apparent) detective never corrected me about the date on which the incident in question had occurred but told me he was familiar with the case and that it was still open."  This silence suggested to counsel that the representative at least tacitly agreed with counsel's theory on when the incident occurred.  However, that belief is immediately refuted by the next sentence in counsel's declaration.  (*Id.*)  The representative stated that he was familiar with the case but would not disclose any information over the phone.  (*Id.*)  In view of that, the representative's silence cannot be interpreted as tacitly approving counsel's belief.

Defendants' misrepresentation must have been intended to "convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert."  *Osborne*, 130 S.W.3d at 774.  Without any allegations that Defendants misled Plaintiff to

believe the incident occurred later than it did, Plaintiff has not sufficiently alleged that Defendants misrepresented a material fact.[7]

The second critical element concerns whether Plaintiff relied on any purported misrepresentations by Defendants. Plaintiff's Amended Complaint lacks any allegations related to his reliance on Defendants' conduct. Indeed, the allegations in the Amended Complaint warrant the opposite conclusion—that Plaintiff did not rely on Defendants' representations. After the June 25, 2020 phone call, counsel for Plaintiff again returned to the ISB office on June 30, 2020. (ECF No. 21-1 at PageID 84.) He then also filed an open-records request that same day. (*Id.*) These facts cut against any reliance argument. If Plaintiff believed the alleged representations made by the ISB employee during the June 25, 2020 phone call, there would be no reason to follow up.

Despite the lengths Plaintiff took to confirm the date of the incident and his account of the Defendants' acts, Plaintiff has not pled a plausible claim to invoke the doctrine of equitable estoppel. The burden falls on him to do so. Consequently, Plaintiff has not pled facts that excuse

_____

6. Plaintiff has not shown that the City decided to conceal information—in fact, the record suggests just the opposite. The City initially responded to the June 24, 2020 open records request filed by Plaintiff's counsel in just six (6) days, on June 30, 2020, and followed up again on July 15, 2020. (ECF No. 21-1 at PageID 83–84.) The City explained in the latter correspondence that Plaintiff's Complaint had been filed "at some time between July 1, 2019 and September 15, 2019. Mr. Billingsley's internal affairs complaint concerned a stop-and-frisk incident that occurred in the days or weeks preceding the Complaint." (ECF No. 21-3 at PageID 91.) These responses not only weigh against concealment, but suggest the City attempted greater transparency. Although the City did not provide a specific date for the underlying incident, Plaintiff's counsel still had notice about the urgency of this matter because the incident must have occurred before July 1, 2019 (otherwise, Plaintiff would have had no reason to file his Complaint). Additionally, counsel could have acquired the July 31, 2019 date from Plaintiff because Plaintiff knowingly provided this date to ISB. (ECF No. 21 at PageID 85.) Therefore, counsel had _reasonable_, albeit imprecise, notice *at most* twenty (20) days before the statute of limitations ran—ample time to file a defective complaint and preserve the matter under the operative statute of limitations. *See generally Searcy v. County of Oakland*, 735 F. Supp. 2d 759, 769 (6th Cir. 2010) (citing *Faranza K. v. Ind. Dep't of Educ.*, 473 F.3d 703, 705–06 (7th Cir. 2007)) ("Waiting until the last hours is not diligent . . . nothing prevented plaintiff's lawyer from acting a day or a week earlier . . . the remedy is malpractice litigation . . . .")

his failure to timely file his claim.  *See Reid v. Baker*, 499 F. App'x 520, 526 (6th Cir. 2012) ("[W]hen the court can ascertain from the complaint that the period for bringing the claim has expired, a plaintiff must affirmatively plead an exception to the limitations statute.").  Therefore, the Court **GRANTS** Defendants' Motion.

<u>**Conclusion**</u>

For the reasons above, the Court **GRANTS** Defendants' Motion to Dismiss, (ECF No. 24), and Motion to Exclude Expert Opinions (ECF No. 34.)  All claims against Defendants are hereby **DISMISSED**.  The pending motion to dismiss as to Defendant Vazeii (ECF No. 39) and joint motion to stay (ECF No. 57) are hereby **DENIED** as moot.

**IT IS SO ORDERED** this 30th day of September, 2021.

*s/ Mark Norris*
MARK S. NORRIS
UNITED STATES DISTRICT JUDGE