IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

DEAUNDRA BILLINGSLEY,             )
                                  )
     Plaintiff,                   )
                                  )
v.                                )     No. 20-cv-02570-MSN-tmp
                                  )
CHRISTOPHER TRACY, JUSTIN         )
VAZEII, PRENTISS JOLLY,           )
MICHAEL W. RALLINGS, and THE      )
CITY OF MEMPHIS, TENNESSEE,       )
                                  )
     Defendants.                  )
_____

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO
COMPEL
_____

Before the court is Plaintiff's Motion to Compel
Interrogatory Answers and Requested Document Production, filed
March 11, 2024. (ECF No. 83.) For the following reasons, the
motion is GRANTED in part and DENIED in part.

### I. BACKGROUND

The facts of this case date back several years. As the
Sixth Circuit explained:

> This civil rights action finds its origins in a July
> 31, 2019 incident in which Plaintiff alleged that two
> uniformed police officers-Defendants Tracy and Vazeii-
> "accosted and detained him, searched his person
> without probable cause or reasonable suspicion" before
> Officer Tracy is said to have forcibly penetrated
> Plaintiff in the anus via an anal cavity search. (Am.
> Compl., R. 21, PageID # 52). Plaintiff alleges that on
> that date, he was walking down a residential street in
> the Binghampton neighborhood in Memphis, Tennessee

when he encountered his friend's son, identified as D.M. The two stopped to chat, and a [Memphis Police Department ("MPD")]-patrol car stopped near the pair. Officers, Defendants Tracy and Vazeii, are said to have jumped out of their patrol car and ordered Plaintiff and D.M. to put their hands on the hood of the vehicle. Tracy detained and patted down Plaintiff while Vazeii searched D.M. Officer Vazeii then placed a small bag of what appeared to be cannabis on the hood of the patrol car, claiming he recovered it from D.M.'s person. At about the same time, Tracy handcuffed Plaintiff's hands behind his back and, in full public view, pulled down Plaintiff's pants, reached a hand inside his undershirts, and rubbed his hands over Plaintiff's buttocks before forcibly inserting one or two fingers into Plaintiff's anus. Plaintiff maintains that this constituted rape under Tenn. Code Ann. §§ 39-13-501(7), 503(a)(I), (2). Plaintiff recalls Vazeii asking Tracy, "Did you check his asshole good?" (Id. at PagelD # 59).

Tracy forced Plaintiff down to the curb, where Plaintiff remained for an hour. Plaintiff claims that throughout this encounter, he objected to and questioned the detainment. At one point, Vazeii allegedly warned Plaintiff that he had "better stop talking" and then pointed to the bag of purported cannabis to warn Plaintiff, "I can write this up how I want to write it, make it however I want to make it." (Id. at PageID ## 59-60). According to Plaintiff, Officer Tracy then tapped his body camera as if to remind Vazeii that the incident was being recorded. After about another hour, the officers released Plaintiff and are said never to have asked for Plaintiff's name. D.M. was also released without charge.

The next day, August 1, 2019, Plaintiff filed a report with the MPD Inspectional Services Bureau ("ISB") to report the incident via a citizen complaint ("ISB complaint"). Plaintiff made no contemporaneous personal record of the date on which this encounter occurred, and, following the incident, it is asserted that Plaintiff suffered emotional distress and trauma from the July 31 incident that caused him to forget certain details-including, critically for present purposes-the date it occurred.

- 2 -

In the weeks and months that followed the encounter, Plaintiff "repeatedly tried - on at least four or five separate occasions - to obtain from the Inspectional Services Bureau any and all records related to his citizen complaint, including" a copy of the complaint itself. (Id. at PageID # 61). ISB is said to have denied these requests because Plaintiff needed to be represented by an attorney before it would speak further or release any information to him. By the time Plaintiff retained counsel in June 2020, it is asserted that he believed the stop-and-frisk incident occurred in mid-to-late August 2019; it bears remembering that the incident actually occurred on July 31, 2019. His counsel, who was told by Plaintiff that the incident happened in mid-to-late August 2019, continued his client's attempts to obtain a copy of Plaintiff's ISB statement from the City of Memphis but fared no better.

Allegations in the amended complaint aver that the City, through the MPD, deliberately concealed or misrepresented information material to Plaintiff's claim, including the date of the incident, i.e., when the statute of limitations began to run. The City is alleged to have concealed this information in various ways, such as telling Plaintiff's counsel to arrive at the ISB office in person when no ISB personnel would be there and, in a June 2020 phone call, "tacitly confirm[ing] [to counsel] that the incident had occurred in mid or late August 2019." (Id. at PageID # 85). Plaintiff's counsel made a public records request to the City on June 30, 2020, seeking "[a]ny and all documentation from, concerning, or reasonably pertinent to [MPD's] investigation . . . of [the] stop-and-frisk incident." (Id. at PageID # 62). A MPD lieutenant replied to the request on July 10, 2020, stating that "there are no existing responsive records to your request" and thus denied the request. (Id. at Page ID # 91).

On July 28, 2020, the ISB closed its investigation into Plaintiff's citizen complaint, three days before the one-year limitations period was set to end; the City "sustained" a finding of "neglect of duty" against Officers Tracy and Vazeii arising from the July 31, 2019 incident. To relay that finding, the

- 3 -

City transmitted a letter to Plaintiff, which began:
"On August 1, 2019[,] [Plaintiff] filed a complaint
against Officers Christopher Tracy and Justin Vazeii."
(Letter, R. 21-4, PageID # 94). The letter thus
indicated that the stop-and-frisk incident had not
occurred in August 2019, as Plaintiff and, as a
result, his counsel, mistakenly believed. Although
this letter clarified the date the incident occurred,
neither Plaintiff nor his counsel received it until
August 19, 2020, nearly three weeks after the
limitations period expired. (Am. Compl., R. 21-1,
PageID ## 63, 85).

The crux of Plaintiff's argument is that he would have
filed his lawsuit no later than July 31, 2020, but for
the acts or omissions by the City, including
withholding Plaintiff's ISB complaint despite repeated
requests by Plaintiff and his attorney; withholding
responsive documents related to Plaintiff's ISB
complaint, even after counsel filed the public records
request; slow-walking the processing of the ISB report
until three days before one year had passed from the
date of the incident; and making no effort to contact
Plaintiff or his attorney before the statute of
limitations expired, despite the then-still pending
open-records request. Plaintiff argues that the City's
actions were the but-for cause of Plaintiff's untimely
filing. Based on these allegations, Plaintiff alleges
he did not discover the exact date the alleged assault
occurred due to Defendants' actions to conceal or
misrepresent material facts, thereby excusing his
filing five days outside of the one-year statute of
limitations period. (Id. at PageID # 71).

Billingsley v. Doe #1, No. 21-6023, 2022 WL 4088511, at *1–3

(6th Cir. Sept. 7, 2022) (internal citations omitted). The Sixth

Circuit also summarized this case's procedural history:

Plaintiff filed suit on August 5, 2020 against
Defendants unnamed officers John Doe I, John Doe II,
Officer Michael Rallings, and the City of Memphis. The
original complaint incorrectly stated that the stop-
and-frisk incident occurred "on or after August 5,
2019." (Compl., R. 1, PageID # 5). On September 16,
2020, Plaintiff filed an amended complaint against

- 4 -

> Defendants City of Memphis and Officers Christopher
> Tracy, Justin Vazeii, Prentiss Jolly, and Michael
> Railings, alleging that Defendants violated Plaintiffs
> federal civil rights and committed various state law
> torts against him. Importantly, the amended complaint
> correctly asserted that the incident occurred on July
> 31, 2019. While Plaintiff admitted that he missed the
> one-year statute of limitations to bring these claims
> against Defendants, he asserted that equitable grounds
> existed for tolling the statute of limitations.
> Defendants filed a motion to dismiss for failure to
> state a claim, contending, as is relevant to the
> instant appeal, that they could not be equitably
> estopped from asserting the statute of limitations as
> a defense to suit. The district court granted
> Defendants' motion to dismiss, and Plaintiff's timely
> appeal followed.

Billingsley, 2022 WL 4088511, at *3. After reviewing the factual

allegations, the Sixth Circuit reversed and remanded the

decision of the district court, finding that Billingsley alleged

sufficient facts to establish a prima facie case of equitable

estoppel. Id. at *5-7. Following the remand, the City of Memphis

("the City") filed a Renewed Motion to Dismiss for Failure to

State a Claim. (ECF No. 67.) The district judge then stayed

Billingsley's response to the motion, "until the issue of

equitable estoppel had been resolved[.]"[1] (ECF No. 82 at PageID

586.) Following status reports by the parties, the district

judge entered an order on December 18, 2023, stating:

> The only task for the Court at this point is to
> facilitate Plaintiff's filing of a motion to compel,

---

[1]The district judge also noted that "[t]he Court clarified,
however, that this stay did not preclude a limited foray into
other issues to the extent they overlapped with equitable
estoppel." (ECF No. 82 at PageID 586 n.1.)

since the information from the parties indicates that such a motion is inevitable and since this case cannot proceed without resolving the parties' discovery disputes. To that end, Plaintiff is DIRECTED to assume that Defendant denies all allegations relevant to equitable estoppel in the Complaint. Should Defendant choose to admit any of these allegations or clarify the bases for their objections, they may do so within the motion to compel process.

(Id. at PageID 587.) The undersigned received Billingsley's motion by referral on March 25, 2024. (ECF No. 87.) The City responded on April 1, 2024. (ECF No. 88.)

## II. ANALYSIS

### A.    Legal Standard

The scope of discovery is governed by Federal Rule of Civil Procedure 26(b)(1), which provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." Id. The party seeking discovery is obligated to demonstrate relevance. Johnson v. CoreCivic, Inc., No. 18-CV-1051-STA-tmp, 2019 WL 5089086, at *2 (W.D. Tenn. Oct. 10, 2019). Upon a showing of relevance, the burden shifts to the party opposing discovery to show, with specificity, why the requested discovery is not proportional to the needs of the case. William Powell Co. v. Nat'l Indem. Co., No. 1:14-CV-00807, 2017 WL 1326504, at *5 (S.D. Ohio Apr. 11, 2017), aff'd sub nom. 2017 WL

- 6 -

3927525 (S.D. Ohio Jun. 21, 2017), and modified on reconsideration, 2017 WL 4315059 (S.D. Ohio Sept. 26, 2017). Six factors are relevant to proportionality: (1) "the importance of the issues at stake in the action," (2) "the amount in controversy," (3) "the parties' relative access to relevant information," (4) "the parties' resources," (5) "the importance of the discovery in resolving the issues," and (6) "whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

**B.    Consultation**

In his Motion to Compel, Billingsley proposes alternative discovery requests to the ones he initially sought. (ECF No. 83 at PageID 596, 600-02.) In its response, the City repeatedly objects, arguing that Billingsley failed to consult with it regarding these alterations, and thus the motion is not ripe for the court's consideration. (ECF No. 88 at PageID 671–72, 678, 682.) Although the parties might have benefitted from additional consultation, the undersigned finds that the issues have been adequately briefed for resolution. However, the parties are instructed to consult on the language of discovery requests prior to filing any additional discovery motions.

**C.    Billingsley's Modified Interrogatory No. 17**

In his modified interrogatory, Billingsley requests that the City:

> List the disposition and pendency time of each ISB
> investigation initiated in 2018, 2019, or 2020 and
> categorized as "Compliance with Regulations,"
> "Personal Conduct," "Excessive/Unnecessary Force," or
> "Rough/Careless Handling." The "pendency time" means
> the time period beginning on the first date that the
> misconduct was complained of or reported and ending on
> the date a final letter of determination was produced
> or the matter was otherwise resolved.

(ECF No. 83 at PageID 596-97.) The City takes issue with several elements of this request.

First, the City objects to the time frame. In his original request, Billingsley sought only those records from 2018-2019 but the City responded by offering to provide only those records from 2019-2020. (Id. at PageID 592.) The City argues that Billingsley's complaint was made in 2019 and a disposition was rendered in 2020, making the only relevant time period 2019-2020. (ECF No. 88 at PageID 672.) Because the parties are in agreement that the 2019-2020 period information is relevant — subject to the City's remaining objections, discussed below — the undersigned will only consider whether the information for 2018 is relevant. The undersigned finds that the information sought for 2018 is not relevant. As the City points out, 2020 was unique in the unprecedented circumstances brought on by the COVID-19 pandemic. Billingsley's request was processed partially during this time, and the court finds that records from a prior year would not reflect the realities of the environment in which Billingsley's claim was processed. To the extent he wishes to

- 8 -

use other processing times for comparison, only those claims
processed during the same time as his complaint would arguably
be relevant. Moreover, all ISB investigations conducted from
2019-2020 would include the seven months before Billingsley's
report, meaning that this time period will capture
investigations, like Billingsley's, that were initiated as early
as fourteen months before the onset of the COVID-19 pandemic.
Therefore, the request will be limited to the January 1, 2019,
to December 31, 2020, timeframe.

Next, the City objects to certain investigation categories
for which Billingsley requests report information. The City has
offered to provide Billingsley with the records of police
disciplinary investigations he seeks for (1) "Compliance with
Regulations, to wit: Search and Seizure"; (2)
"Excessive/Unnecessary Force"; and "Rough and Careless
Handling." (ECF No. 88 at PageID 674.) Billingsley seeks
production of these in addition to *all* investigations
categorized as "Compliance with Regulations" (not just those
related to "Search and Seizure") as well as matters categorized
as "Personal Conduct." (ECF No. 83 at PageID 592–93.) He first
argues that the "differences *between* how the City handled ISB
investigations similar to that of Billingsley, and how it
handled other types of investigation, *could* only emerge from a
dataset that included ISB investigations *dis*similar to his." Id.

- 9 -

at PageID 596) (emphasis in original). Second, he argues that some incidents may have been wrongly categorized in the database, meaning that some relevant reports may not be included in the City's production of discovery. (Id.) The undersigned finds that the additional categories Billingsley seeks are irrelevant. For "Compliance with Regulations," the inclusion of departmental investigations into non-search and seizure incidents, which the City argues includes minor violations, will not serve any useful function in discovery. (ECF No. 88 at PageID 674.) Billingsley's claim is about a search and seizure incident, and neither the small potential for miscategorization nor Billingsley's declared desire to do some sort of broad comparison of virtually all police incidents justifies the need for such additional discovery. For the same reasons, the "Personal Conduct" category, which includes activities by police conducted off duty, serves no relevance to this limited equitable estoppel discovery. Therefore, the request will be limited to (1) "Compliance with Regulations, to wit: Search and Seizure"; (2) "Excessive/Unnecessary Force"; and (3) "Rough and Careless Handling."

Finally, the City objects to Billingsley's requests for the dispositions of the investigations, arguing that only the pendency is relevant. (Id. at PageID 676–78.) The undersigned disagrees with the City here. For the purpose of understanding

the timelines for related investigations, which the parties agree are relevant, the outcomes of these investigations are necessary to get a complete picture of this information. Given that Billingsley seeks to compare the investigation of his report with others, and given that the parties agree that this kind of comparison discovery is relevant, the timeline and the disposition are each discoverable. Understanding whether timelines are different in cases with different dispositions may assist the finder of fact in deciding whether Billingsley is entitled to equitable estoppel for his claims.

**D.    Billingsley's Request for Production No. 7**

Billingsley seeks the production of documents that the City allegedly told him they would provide in January, 2023. (ECF No. 83 at PageID 597.) In its response, the City declares that it "has no further documents responsive to Request No. 7 other than what has already been produced." (ECF No. 88 at PageID 678.) The undersigned orders that the City provide a verified response in a supplemental discovery response.

**E.    Billingsley's Modified Requests for Production Nos. 8 & 17**

Amending and combining two of his requests for production, Billingsley requests that the City:

> Produce copies of each and every public-records request for body-worn-camera ("bodycam") footage (including requests submitted through the City's online portal or otherwise) and all documents generated by the City after and in the course

- 11 -

responding to those requests. This Request is limited
to Public Records Requests submitted between July 13,
2018 and July 13, 2020.

(ECF No. 83 at PageID 600.) He argues that the City's claims

that this would result in "hundreds of thousands" of pages of

documents are overstated because he is not seeking the footage

and documents produced in the requests, but is seeking only:

[A d]ocument (typically an email) confirming receipt
of Request;

Documents (typically emails) indicating the City needs
more time to process the Request;

Documents (typically an email) denying the Request or
advising the City is making or will make the requested
documents available (but not the documents specified
in the public-records requests per se);

Documents specifying the price of producing copies;

Documents indicating the requested records are
available for inspection and pickup; and

Internal documents (likely emails between the public-
information office and MPD) generated in the process
of responding to a Request (again, not the documents
specified in the public-records requests per se).

(Id. at PageID 599.) He claims that this "information directly

relates to Billingsley's allegation the City improperly denied

his public-records request in an effort to conceal information

related to his claim." (Id.) In its response, the City states

that it has previously

offered to produce reports generated by the Public
Records Office for 2019 and 2020 that list all the
open records requests targeted at MPD for those years.
Further, these reports would show the creation and

- 12 -

closing dates for each request, the disposition of
each request, the name of the person making the
request, and a description of the public record
requests. Notably, the City has offered this
information for an even broader category of requests,
i.e., those targeted at MPD rather than simply
requests for body-worn camera footage.

(ECF No. 88 at PageID 679) (citations omitted). The undersigned

finds that the documents Billingsley seeks beyond what the City

has offered are not relevant to equitable estoppel. Billingsley

will be able to compare the timeline and disposition of his

counsel's records request with others based on the information

the City has offered to provide. None of the additional records

he seeks, as well as the 2018 information, will serve any

additional fact-finding purpose for the limited nature of this

discovery and will undoubtedly result in significant additional

production burdens. The undersigned orders that the City produce

these reports in a format that allows Billingsley to search for

body-worn camera reports specifically.

**F.   Billingsley's Modified Requests for Production Nos. 9 & 18**

Amending and combining two of his requests for production,

Billingsley requests that the City "[p]rovide copies of each

*denial* by the City of a public-records request submitted to the

City between July 13, 2018 and July 18, 2020." (ECF No. 83 at

PageID 601) (emphasis in original). The City argues that these

are not relevant, and any potentially relevant information

Billingsley seeks will sufficiently be addressed in the reports

related to Modified Requests for Production Nos. 8 and 17. (ECF
No. 88 at PageID 681–82.) Given the parties' agreement that
comparison discovery is relevant in this case, the undersigned
finds that the denials themselves might be relevant, even with
the City's production of its reports. The language of the
denials and reasons given could better allow Billingsley to
compare the denial of his counsel's request with others, thereby
giving him the opportunity to argue (as he apparently intends)
that his case was improperly delayed. However, the undersigned
will limit this modified request for production as follows: (1)
production will be limited only to denials of requests for body-
worn camera video, and (2) the time period is limited to January
1, 2019, through December 31, 2020. All additional information
Billingsley seeks is irrelevant to equitable estoppel.

**G.    Billingsley's Modified Request for Production No. 11**

Amending his request for production, Billingsley requests
that the City "[p]roduce all audit logs — or any other record,
including ESI, indicating the time and date on which footage was
reviewed and by whom — for any MPD body-cam or dashcam footage
for any incident that was the subject of an ISB investigation
initiated in 2018, 2019, or 2020." (ECF No. 83 at PageID 602.)
The undersigned does not see how this request is relevant to the
issue of equitable estoppel. Although the record of the logs
from Billingsley's own requests could be relevant to showing

whether MPD slow-walked his report, the comparative value to other cases is non-existent.

### III. CONCLUSION

For the above reasons, Billingsley's Motion to Compel is GRANTED in part and DENIED in part. To the extent the motion is granted, the City shall produce responsive, non-privileged information and documents within twenty days from the date of this order.

IT IS SO ORDERED.

s/Tu M. Pham
TU M. PHAM
Chief United States Magistrate Judge

April 9, 2023
Date

- 15 -